Case number 22-3283 SHH Holdings LLC v. Allied World Specialty Insurance Company. Oral argument not to exceed 15 minutes per side. Mr. Chotvacs for the appellant. Good morning, your honors, and may it please the court. My name is Charles Chotvacs and I represent the appellant, Allied World Specialty Insurance Company. I'd like to reserve four minutes of my time for rebuttal, please. Your honors, this is an insurance coverage action. The insured organization, SHH Holdings, is seeking coverage for the retaliation component of a KETAM action under the Employment Practices Liability Coverage section of a policy issued by my client, Allied World. The facts of this case are straightforward and undisputed. The KETAM action was filed under seal in November 2016 against two SHH subsidiaries. The action was brought by three former employees alleging that SHH and its affiliates submitted false claims to the federal government for unnecessary rehabilitation therapy at the nursing facilities that they ran and that SHH retaliated against them when they spoke up about those practices. Let me ask specifically, what are you arguing that SHH was required to disclose in response to I guess questions one and two? Are you saying they needed to disclose the actual action, the KETAM action, or the CID? So the first question asked for investigations, claims, lawsuits, matters that preceded the three years leading up to the application. In this case, that would encompass the civil investigation demand that was issued in January of 2017, the DOJ investigation that followed, but that would also, question number one, also encompasses the KETAM action itself, whether or not they knew about it. Because it was, even though it was under seal, it was pending and existing in the three years prior to the application being submitted. How could they have an obligation to disclose something they did not know about? They don't have an obligation. They don't have to disclose. It applies whether or not they disclose. The application itself highlights. But doesn't that presuppose that the insured knows about the inquiry, investigation, lawsuit, whatever? I mean, are you just saying that if they just exist in the world regardless of whether the has to disclose it? In this case, we're not saying that they could disclose. Okay, because they didn't know about it, right? Right. They only knew about the CID and the investigation. Correct. But they didn't know about the KETAM. I mean, maybe you could kind of guess that it was out there, but they didn't actually know it. They were not aware of the retaliation component of the KETAM action until it was unsealed in August of 2019, which was after the application was submitted in April of 2019. But they knew about a portion of the KETAM action, just not the retaliation. They knew about the... The KETAM action was filed in November of 2016, and then filed under seal. Of course, you have to provide notice to the government. The government turned around two months later, initiated its investigation, issued its CID, saying we're initiating, starting a false claims act investigation. And then over the course of the next two and a half years, undertook its investigation and entered into negotiations with SHH. I want to go back for just a second. Yes, sir. In response to questions one and two, what specifically were they supposed to say in response to those two questions? So the CID and the DOJ investigation would fall within one. And then within two, they would fall there as well because of the false claims act allegations that they were aware of. They knew that that could lead to liability. That was in their financials. They disclosed that that could lead to material losses. But you agree because they didn't know about the actual KETAM lawsuit that they weren't required to disclose that in response to questions one and two? They couldn't disclose it in response to question one, but it still fell within the confines of that question whether or not they knew about it. It hadn't materialized yet. So isn't what they were required to disclose what had happened as of the time they filed the application? But it existed, Your Honor. And that's what... Well, yes. They were unaware of it because it was under seal. Right. But courts have found in applying exclusions dealing with prior and pending litigation matters. There's a H.A.R. acquisitions case from the 11th Circuit and the American Virgin case from the Pennsylvania Superior Court dealing with KETAM actions that were either under  the exclusion or under the exclusion. But the fact that they existed precluded coverage. Because it was existing at the time regardless of... Is that under the exclusion that you're making that argument? I don't understand how you make that argument under question one because you can't answer a question unless you have knowledge to answer the question. But you're not required to disclose... I think you're trying to prove too much here. I mean, can't you just hang your hat on the CID and the DOJ investigation? Yeah. I mean, they didn't disclose that. I mean, you're making it harder for yourself. Yeah. I'm just like saying, why do you need to also have to disclose a KETAM action? But it goes to the whole... If you look at what these are set up for, it's so... And SHH was a new risk. So they had been with another insurer. They were shopping it out. They brought it to Allied World. Allied World looked at it, accepted their application. It wasn't our application. We accepted it. And the application is set up so that they are not bringing... We're not going to cover risk that is out there. Whether or not they know about it, whether or not they disclose it. This isn't a rescission case. Had they disclosed the CID, you would have had everything you needed to have in order to evaluate the risk. But we're not talking... That deals with the underwriting and that would deal with rescission. But here we're saying, we're just not going to walk into a pre-existing matter, which is what the KETAM action was, even though it was filed under seal. It's what the CID and the DOJ, which they clearly knew about and had been working with the government for two and a half years when they applied for coverage with us, and four short months later ended up settling in principle for $10 million. What do we do about the fact that the CID was mentioned in the financial disclosures, which I think the application states becomes part of the application? So what do we do with that? It doesn't... It's a nullity, your honor. It doesn't matter because the application exclusion applies whether or not they disclosed the matter there. And the application has additional language that says, the applicant understands and agrees that if any fact, circumstance, or situation exists, whether or not disclosed in this application, any claim or action arising from any such fact, circumstance, or situation may be excluded from coverage under the proposed policy if issued by the insurer. Okay. One question before we get off the questions. Were these questions not on the standard form that Allied usually uses? I didn't quite... It seemed like it might be from a different company, the form. It is. It's from Hiscox. So a lot of times what will happen in a situation like this, if they're with an insurer, their old insurer, and they're a very sophisticated company, I'm sure they've got risk officers within their company as well as they have sophisticated brokers here. So when a policy comes up for renewal, a lot of times they will shop that policy around to see what deal they can get. And typically they'll take the application from their current insurer and the broker will use that and shop it around. And is this a standard form used in the industry, these questions? Is it fair to say? Yes. The timing question and knowledge of facts and circumstances that may lead to a claim. So they want to know, some say three years, some say five years, but they always have a question dealing with matters that have accrued, such as a lawsuit, prior demands from customers and the like, as well as even if there isn't a current claim or investigation going on, do you know of bad acts that could lead to a claim in the future? But the questions were not specifically posed by Allied World. They were just given as part of information that SHH Holdings gave to Allied. They had two Q&As, I guess, that are standard in the industry. And that was Allied saying they relied upon the answers to those questions in deciding whether or not to issue the policy. Is that fair to say what was going on? Yes. I mean, these are typical questions that you would see. The wording may be a little different. Like I said, some may say three years, some may say five years, but there is typically a question dealing with timing backwards, what has occurred, as well as what facts and circumstances are out there that may lead to something in the future. And these are set up so that, one, we're not going to cover things that have already happened that are pre-existing, and we're not going to cover things that, you know, the wrongdoing has already occurred or you know of something that may lead to a claim in the future. We're just not going to walk into that. And so that's a typical form that you would see in the insurance industry here with those types of questions. So the district court in this case failed to apply the plain language of the application question to exclusion to the facts of this case and created coverage for a pre-existing dispute in derivation of those provisions. Let me go back to the question. I know we were trying to leave the questions, but as it relates to the exclusionary language, which references back to questions one and two, I think you've acknowledged that the CID is what was supposed to be, had been disclosed in response to questions one and two because no way they could have known about the actual QI-TAM action. How does the QI-TAM action or the retaliation claims in the QI-TAM action arise from the CID? So that looks at, I see my time, but if it's okay, I'll respond. So the QI-TAM action was filed under seal here, and it's a linear progression here. It's filed under seal. The government has the option, 60 days to decide whether or not it's going to take over or not. They can get extensions to undertake their investigation, which is exactly what they did here. They issued the CID. They did their investigation. They ended up working to resolve the False Claims Act portion of it, not the retaliation portion of it there. Once they were done with that, they decided to turn over the retaliation component to the three former employees, the relators. At that point, the matter was unsealed. SHH learned about it and made a claim under the policy for it. And so at that point, it went from an existing lawsuit to a claim, and therefore, that progression of undertaking the investigation, issuing the CID, led to it being unsealed. And a claim is considered, includes a judicial proceeding commenced against an insurer by service of a complaint, and a claim is deemed made when an insurer receives notice of it. So here, it became a claim once it was unsealed, once they learned about it, and that was because they had undertaken the CID and the DOJ investigation process. So it naturally flows from that here. There's no further questions. May it please the court, my name is Michael O'Donnell and I represent the Appley SHH Holdings in this appeal. The appeal before this court is a de novo review of two of the district court's decisions. The first on the coverage matter that we've just been discussing, but there's also a second order that Judge Gwynne issued with respect to our attorney's fees related to the coverage action as well. That's an issue before the court. I think before we get started on all the details, there are six dates in this case that are very important. You heard about some of them, but I just want to reiterate them. In November of 2016, a KTAM action was filed in the Eastern District of Virginia under seal. That KTAM action contained four claims. Three related to physical therapy billing issues, false claims act issues, and one related to retaliation claims. In January of 2017, three months later, as a result of the KTAM action, the Department of Justice issues a civil investigative demand, the 2017 CID, as it's been referred to in the briefs. Of course, the January 2017 CID relates only to the physical therapy billing issues. There's nothing about that that would allow SABR to assume there's a retaliation component. There's a little bit of difference in terms of the retaliation claim because SSH would have been aware of its own conduct toward the employees in question, so it might not have known that it was alleged to have been retaliatory, but it would have had knowledge of all the operative facts. No question, Your Honor. Two points to that point that you're making. The first is, this case was submitted on stipulations to Judge Gwynne, and the parties have stipulated that SHH had no knowledge of any retaliation claims until August of 2019, four months after it issued its application. That's a stipulation that's before the court that the parties have agreed to, and those are the facts. They were aware of its knowledge. I'm making a distinction, I guess, between the claims and the factual knowledge that And it would be aware of its own conduct, so there could be no question about that. But CIDs can result from a number of different ways. A patient in the facility could have made a report. A family member of a patient, there are vendors, in and out suppliers of the facilities could have made a report. So, I will say I don't think it's fair just to assume that there must have been some employment claims out there because the CID existed. Those CIDs can come to- rise to a claim. It doesn't talk about knowing of claims. It's knowing of- Well, it says, knew of any fact that our mission could give rise to a claim, suit, or action under any coverage part of the proposed policy. And this issue was briefed before Judge Gwynne. The proposed policy was the policy that we were seeking, the Employment Practices Act liability policy, and- Well, it would seem to me that if you got the CID and you were aware of that, and you were aware you'd terminated some employees who were significant, and who- that there would have been some- it's just hard for me to see- to separate your knowledge of the facts and the claim of ignorance. Well, I hear you, Your Honor, and certainly we would have been aware of employees that were hired and fired, but the CID gave no claims that these retaliation claims were out there, and the stipulation- the stipulated facts, which Allied agrees, they stipulated to that we didn't know about any employment issues until August of 19. So I think for what's in the record before the case, I think the facts show that- Well, maybe the facts that the parties ended up stipulating don't permit the logic I just followed. I'm not sure. Well, and with respect to question two, the district court looked at this- obviously briefed this issue. The district court wrote that any SHH request for an investigative demand false claims act coverage would have been barred by the policy because SHH received notice of the false claims act claims in January of 17, more than two years before the April 19th policy. So Judge Gwynne and SHH believes as well that there would be no reason to disclose the 2017 CID with respect to question two because it could never give rise to any coverage part under the proposed policy. And by the way, the facts bear that out. SHH never requested from Allied any insurance claim related to the false claims act. They never submitted a claim. They never asked them to pay a claim. They never came to them and told them there's this investigation and we want to be reimbursed. They never had any intention of seeking coverage under this policy for the claim. So with respect to question two, I think Allied answers truthfully and honestly that it's employment coverage and it's not aware of any employment issues at the time. So I don't think that SHH had an obligation to disclose the 2017 CID with respect to question one or two. But even if this court were to determine that that would have been the better case, and Judge Gwynne did not agree with that, and because he did not, that sort of ended his analysis. But if this court agrees or decides that SHH had an obligation to disclose the 2017 CID with respect to question one or two, SHH submits that that's not the end of the analysis. Because you have to, those are just answers to questions in the policy. You then have to look at the application exclusion language. And the application... Before you get there, not to cut you off, but why wasn't the CID disclosed in response to questions one or two? So SHH believes it's not responsive to questions one or two, and it certainly wasn't hiding it because, Judge Mathis, to your question earlier, it disclosed it with respect to its financials. There was no reason not to put it in response to question one or two if you were going to put it in the financials. They just don't believe it's responsive. They're seeking employment practices, liability coverage, they're aware of a physical therapy billing issue with the federal government that they're working through, but with respect to employment coverage, it doesn't relate. So they didn't think it was responsive. But they weren't hiding it because they turned it over in the financials. So I think the reason is that they just didn't believe it, they had an obligation to. But I would like to make this point about the application exclusion, which is what we're talking about with respect to questions one and two, those are just answers to questions. But if you read the application exclusion, it says, with respect to questions one through three of the claims information section of this application, if such investigations, claims, lawsuits exist, then such investigation, claims, lawsuits, and other investigations, claims, and lawsuits arising therefrom or arising from such knowledge, violation, information, or involvement is excluded from the proposed coverage. So that is the linchpin, I think, of Allied's case. That's why they have to say somehow that the 2016 KETAM action arose from a 2017 civil investigative demand because the application exclusion only excludes what you list in response to questions one and two, and those actions, claims, investigations arising therefrom. And so they try to argue to the court that the 2016 KETAM action, which came first in time, arose from the 2017 CID. And that's just factually not true. Well I'm going to switch gears on you, sir, if you work through that. I think the point was as good as I could make it. The district court basically concluded that if one reads the application and gives it its plain meaning, it imposes overly broad disclosure obligations on SSH. It seems to me that there's a real question here about the district court's role. It's not for the district court to ignore the plain meaning of a contract because it imposes unfair burdens. Is it? How do you justify that? Yeah. Respectfully, I think what Judge Gwynne did was he doesn't believe that the plain meaning of the question is obvious. I think what he says is at one point in his decision is this case involves two reasonable interpretations of the policy. And I think he says that Allied read it one way and SHH read it another way. And because it's ambiguous, if... I'm sorry. I don't think he says it's... I think he talks about the plain language of the policy, but I think either expressly or implicitly in his decision, he thinks that the question is open to two interpretations. And actually what he says is he thinks that SHH has the better interpretation and that's when he starts talking about the strange results... Who composed the question? I'm sorry? Who composed these questions? Did the insured impose the questions here? So our view is, as Mr. Chotvac said and I think accurately, SHH had filled out a Hiscox application because it was applying for coverage from Hiscox, but then Allied... Hiscox is an agency independent of Allied, correct? Correct. Okay, who were they representing? They were representing your client, weren't they? I'm sorry, Your Honor. I don't know the answer to that. My understanding is that that application was then adopted by Allied and they used it as their own... But the wording was originally composed by SHH, wasn't it? The what? The wording of the questions were adopted originally by SHH, weren't they? SHH answered them, but SHH did not compose those questions. Well did Allied compose the questions? No, I believe Allied adopted them when they agreed to accept that application. So why should we be interpreting the questions against the insurer here, given that the insurer didn't compose the questions? Because it adopted them from Hiscox. It adopted them and chose to go with them. But Judge Gwynne didn't... There is an element that it could be construed against the insurer, but Judge Gwynne didn't say that it needed to be construed against Allied. And actually Judge Gwynne agreed with us that we had the better interpretation. So Judge Gwynne didn't not rely on that legal argument that if it's ambiguous it has to be interpreted in favor of coverage. He said we had the better interpretation. Even though it went against normal grammar that you would apply the clause to the most recent... And that's what Judge Gwynne wrote in his opinion and that's where he said that their interpretation would lead to these strange results where if you interpret it their way these executives would have to reveal any lawsuit investigation they were involved in whatsoever including divorce cases or child custody disputes. And that's not what... To Judge Gwynne's way of thinking, and SHH would agree, that's not what they were looking for. They were looking for, we think, claims relevant to the insurance that was being sought. And that's why the qualifying language at the end of that question, at the end of question one is important, and it says for any coverage for which the applicant is applying. And SHH reads and interprets that to require disclosure of only such investigations or claims that are relevant to the type of insurance being sought. In this case it was EPLI insurance. And so in SHH's view the 2017 CID wasn't relevant to that because it didn't have anything to do with employment issues. And with respect to during the procurement process in the financials the 2017 CID was disclosed and we cite you a case from the Ohio Supreme Court English versus National Casualty Company that says this, it is usually held that where the insurer at the time of the issuance of a policy of insurance has knowledge of existing facts which if insisted on would invalidate a contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts and the insurer is estopped thereafter from asserting the breach of such conditions. Again, English versus National Casualty Company, Ohio Supreme Court case. We submit that they were on notice through the financials, they were on notice of the 2017 CID. So while the 2017 CID was not revealed or answered with respect to questions one or two, it certainly was included during the procurement process in the financials which was incorporated by its own language into the application. So we submit for that reason as well this court could affirm the court below. I see I just have a minute left and I'd like to touch on the attorney's fees issues. We really haven't talked about it. But I think this case and actually Judge Gibbons you said on a case in 2010 out of this court, Bank One NA versus Echo Acceptance Corp. Much has been made by Allied that the duty to defend is different than the duty to reimburse. And I think the Bank One case out of this court says that you do not need to have a duty to defend in order to find attorney's fees that can be recoverable in a coverage action. And quickly what Bank One says is, and again all the same arguments being made here were made in the Bank One case, but Bank One, the court held that the defendant in Bank One had a duty to provide funds for the attorneys for Bank One not only in the underlying action but also in the action to enforce that provision in the agreement. The Sixth Circuit adopting the rationale in Worth which is an Ohio Supreme Court case said that because the defendants failed to abide by the terms of their agreements, Bank One incurred attorney's fees and costs associated with the underlying litigation and the present case. As such, Ohio law allows for Bank One to be made whole and recover its attorney's fees in both cases. SHH submits that the same is true here and that it is entitled to have its attorney's fees affirmed in this case as well as the decision of the trial court with respect to the coverage issue. Unless there are any questions, thank you. Just to hit on what Mr. O'Donnell was saying about the Bank One case, in that case the defendants had an indemnity agreement that specifically provided for the recoupment of cost if they had to go after the indemnitor. It said defendants were contractually obligated to indemnify Bank One for any losses arising from deal or fraud. The credit agreements also required defendants to indemnify Bank One for any reasonable fees and disbursements of counsel paid by Bank One arising out of or resulting from the breach of any covenant by defendants in the credit agreements. So it specifically allowed for this recoupment of attorney's fees if they had to chase down the indemnitor. I wanted to hit on what you were discussing, Judge Bush, about the Hiscox application and the contra preferitum doctrine. So here, Hiscox is an insurer, just like Allied World, so they were utilizing their form, so it was drafted by them. Yes, they brought it to Allied World and Allied World, as an accommodation, agreed to accept it. But Allied World did not draft that. It's just as much on them as it is on us. I understand that point. I guess I want to make sure I understand what your argument is. I think you're saying under the application exclusion, it says if any such, I would say lawsuit exists, then the lawsuit is excluded from coverage. And so you're saying because this QI-TEM action existed, everything about the action is excluded from coverage. And it doesn't matter whether SHH knew about all the claims or not. It just doesn't exist. They were saying basically, we're just not going to insure you for this. And so it doesn't really matter what was disclosed or not. Right, this isn't a rescission act. So the fact that the CID was or was not disclosed, really, I think your argument is it doesn't matter. Right. Because as we know now, as a real world facts, as all the facts have unfolded, that there was this action out there. And you weren't insuring for that. Correct. And this was a representation made by SHH to Allied in the exclusion that they were not asking for this coverage, essentially. Because this is coming from SHH to Allied. Right. They brought it to us. We agreed to accept it. So to somehow say that our agreeing to accept it means that all of a sudden we became the drafter of the agreement. And dealing with that doctrine as well, it's based upon the idea that someone with a lot of power is wielding a contract to a smaller party that has no say over the contract at all. There's an adhesion contract. That's not the case here either. They deal with hundreds of insurance policies through their company. They have sophisticated brokers. This was a level playing field here. And so to deal with the contra preferendum. And to go to what Mr. O'Donnell was saying, Judge Gwynne, in starting out his discussion, says the case involves two reasonable interpretations of an insurance policy. He didn't say that theirs was more reasonable than he said. But for each of the claims involved, the views do not compete on a level playing field. And then went into the contra preferendum doctrine, which is how he came out in this case. But that should not be the case here. Thank you all very much for your time.